# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK DAVID REID,**<br>    Plaintiff,<br><br>    v.<br><br>**HEARTLAND PAYMENT SYSTEMS, a Global Payment Company,**<br>    Defendant. | **CIVIL ACTION**<br><br><br>**NO. 17-4399** |

## MEMORANDUM RE: MOTION TO DISMISS

**Baylson, J.**                                                                                                    **January  19  , 2018**

### I.    Introduction

Pro se Plaintiff Mark Reid,[1] who suffers from Seasonal Affective Disorder, was employed in sales at Defendant Heartland Payment Systems until his termination on November 29, 2016.  He subsequently filed suit, alleging three counts:

Count I: Breach of Contract

Count II: Fraud in the Inducement

Count III: Violation of the Americans with Disabilities Act

Defendant's Motion to Dismiss the Complaint is presently before the Court.  For the reasons that follow, this Court grants Defendant's motion to dismiss without prejudice as to all counts, with leave to amend.

---

[1] The Court strongly suggests that Plaintiff attempt to retain counsel.  Pro se representation is very difficult in this court where knowledge of Federal statutes and Rules of Civil Procedure are very important.  If Plaintiff does not have funds to retain counsel, or counsel will not represent Plaintiff on a contingent fee basis, Plaintiff should consult the Clerk of our court to file a request with panel of employment counsel who may, after review, be willing to represent Plaintiff without any advance payment of fees or costs.

## II. Background

The following facts are taken as true from Plaintiff's Complaint. Plaintiff asserts 114 separate paragraphs of facts before alleging his causes of action. Defendant Heartland Payment Systems is a corporation "in the business of helping company owners and other decision makers make sense of three categories of financial services: (a) credit card payment processing, (b) marketing services, and (c) payroll." (Compl. ¶ 6, ECF 1-1). Defendant employs thousands of "sales professionals, most of whom are involved in selling Defendant's credit card payment process services." (Id. ¶ 7). Plaintiff interviewed for a sales position with Defendant on or around February 3, 2015, and disclosed his diagnosis of Seasonal Affective Disorder (S.A.D.) to the interview. (Id. ¶ 9-13). He was offered full-time employment with Defendant on March 16, 2015. (Id. ¶ 14). On March 19, 2015, Plaintiff was offered the Heartland Sales Professional Bill of Rights, which, according to the former CEO, contains an assurance that employees "will not be treated unethically." (Id. ¶ 15).

At the end of a five-hour "jumpstart" training on March 19, 2015, Plaintiff stayed behind to ask one of the trainers "If [because of my S.A.D.] some months I am a little bit lower than expectation [in sales], would this be acceptable if other months I was much higher?" (Id. ¶ 18) (alterations original). The trainer responded, "sure, if in some months you were to achieve $10,000, then it would be okay if you were lower than $6,000 [in others]." (Id. ¶ 19) (alteration original). Plaintiff alleges that had he not received this response, he would have "quit Heartland training and not moved forward with his employment." (Id. ¶ 21).

Defendant assesses employee performance by sales margin, which is the estimated yearly gross revenue that Defendant will receive from a customer in exchange for processing credit card payments. (Id. ¶ 23). After the first six months of employment, employees are required to achieve $6,000 in sales margin three out of every four months; if they achieve less than $6,000

twice in any four consecutive months, the employee would be designated a "teammate-at-risk" and fired upon failure to achieve $6,000 in sales margin during each of the next three months. (Id. ¶ 34-35). Defendant defines a "WIN" as achieving $6,000 in sales margin. (Id. ¶ 55). As a result of "his disclosures about possible S.A.D.-induced performance fluctuations," Plaintiff "reasonably believed consecutive sub-$6000 months would not be the basis for" teammate-at-risk designation or termination. (Id. ¶ 37-38).

In March 2016, Plaintiff communicated with Defendant's Director of Human Resources regarding his S.A.D., and provided medical documentation of his diagnosis. (Id. ¶¶ 48-52). In response, the Director of Human Resources stated that Defendant was "willing to work with you." (Id. ¶ 52).

Plaintiff "had prospecting success demonstrating strong potential to possibly achieve sales of very large accounts in 2016." (Id. ¶ 60). In September 2016, Plaintiff began "prospecting" Liberty Gas stations in Baltimore, Washington, DC, and Northern Virginia in hopes of signing deals, and was pursuing a deal with 157 locations. (Id. ¶¶ 63-76). So-called "petro deals" are "complex cooperative effort[s]" and "take much longer…to close" than other deals. (Id. ¶¶ 66-68).

On September 22, 2016, Defendant rescinded a policy known as "Policy 37," which had previously permitted a practice known as "account flipping," which allows sales "to be recorded without the delay associated with processing," and is "vital" for selling petro deals, because it "cuts out more than a week…of installation time." (Id. ¶¶ 79-81).

Because Plaintiff was unable to "flip" the Liberty Gas deal, he did not achieve a "WIN" (i.e., $6,000 in sales margin) for September 2016, and "this record placed Plaintiff on

3

'Production Watch': if he did not achieve a "WIN" for each of the next three months, he would be terminated. (Id. ¶¶ 84-87).

Defendant failed to provide Plaintiff any "support or accommodations for Plaintiff's S.A.D.," Defendant terminated Plaintiff November 29, 2016. (Id. ¶ 89-90).

### III. Procedural History

On September 20, 2017, Plaintiff filed this action in the Chester County Court of Common Pleas. (Compl., ECF 1-1). On October 2, 2017, Defendant removed to this Court. (Removal, ECF 1).

On October 4, 2017, Defendant filed a motion to transfer venue to the District of New Jersey, based on the forum selection clause in the "Relationship Manager Agreement" ("RM Agreement") that Plaintiff purportedly signed, which it attached to the motion. (Mot. to Transfer Venue, ECF 3). In his response, Plaintiff asserted that he had never signed the RM Agreement. (Pl.'s Opp. to Transfer Mot., ECF 4). Thereafter, the Court scheduled an evidentiary hearing on the issue of whether Plaintiff had signed the RM Agreement. (Order, ECF 8). Defendants submitted a letter asking to withdraw their motion to transfer venue on November 8, 2017. (Letter, ECF 12). The Court issued an order allowing the pleading to be withdrawn the following day. (Order, ECF 14).

Meanwhile, Defendant had moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on October 12, 2017. (Mot. to Dismiss, ECF 5). Plaintiff filed a brief in opposition on November 8, 2017, (Pl.'s Opp. to Mot. to Dismiss, ECF 13), and Defendants filed a reply brief on November 15, 2017. (Def.'s Reply Br. in Support of Mot. to Dismiss, ECF 16).

Plaintiff filed a "Motion to Strike Alleged 'RM Agreement'" on November 30, 2017. (Pl.'s Mot. to Strike, ECF 17). Defendant filed a memorandum of law in opposition on December 14, 2017. (Def.'s Opp. to Pl.'s Mot. to Strike, ECF 19).

4

Plaintiff also filed a "Complaint-Clarification (Or Amendment)" on November 30, 2017. (Pl.'s Compl.-Clarification, ECF 17). Defendant filed a memorandum of law in opposition on December 14, 2017. (Def.'s Opp. to Pl.'s Compl.-Clarification, ECF 20). Plaintiff filed a reply on January 8, 2018. (Pl.'s Reply in Support of Compl.-Clarification).

The pending motions are now ripe for decision.

### IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)). On a motion to dismiss under Rule 12(b)(6), this Court may consider the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Plaintiff's Complaint contains many facts but does not sufficiently specify how Defendant's conduct satisfied essential elements of each claim.

### V. Discussion

**A. Motion to Dismiss**

Defendants frame their arguments as though the Court, at this stage of the litigation, were construing the language of the Relationship Manager Agreement (RM Agreement) that Plaintiff

purportedly signed, which it attached to its motion to dismiss. (RM Agr., Ex. A. to Mot. to Dismiss, ECF 5-3). When deciding a motion to dismiss, a district court generally "may not consider matters extraneous to the pleadings"; however, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002). The RM Agreement, which Plaintiff denies signing, is not such a document, and the Court therefore declines to consider it for purposes of ruling on this motion. For the same reason, the Court declines to apply New Jersey choice-of-law provision contained in the document labeled as the RM Agreement sua sponte. (RM Agr. ¶ 16).

1. **Breach of Contract**

Under Pennsylvania law, "a plaintiff seeking to proceed with a breach of contract action must establish '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (alteration original). "While not every term of a contract must be stated in complete detail, every element"—essential terms, breach, and damages—"must be specifically pleaded." Byrne v. Cleveland Clinic, 684 F. Supp. 2d 641, 658 n.20 (E.D. Pa. 2010) (quoting CoreStates Bank, 723 A.2d at 1058).

Plaintiff asserts that he was offered employment on March 16, 2015, and attended a training on March 19, 2015—the same day he received the "Heartland Sales Professional Bill of Rights"—at the end of which Division Manager Kenneth Haag told Plaintiff that it would be acceptable if Plaintiff "in some months…were to achieve $10,000" and "lower than $6,000" in others. (Id. ¶¶ 15-19). Plaintiff further asserts that "[h]ad Haag not promised that Defendant

would accommodate Plaintiff's S.A.D.-induced sales fluctuations, Plaintiff would have quit Heartland training and not moved forward with his employment with Defendant." (Id. ¶ 21). He does not assert at any point that he actually signed or otherwise entered into a written a contract after receiving the offer on March 16, 2015.

Plaintiff asserts that he "entered an employment contract with Defendant," which "incorporated Defendant's Sales Professional Bill of Rights." (Compl. ¶¶ 116-17). He attached the Sales Professional Bill of Rights as Exhibit B to his Complaint but did not attach any employment contract that purportedly incorporated it. He asserts that Defendant breached the contract in four ways: (1) "when it failed to provide Plaintiff with adequate training"; (2) "when it rescinded Policy 37 without notice on September 22, 2016"; (3) "when it placed Plaintiff on Production Watch in October 2016"; and (4) "when it terminated Plaintiff in November 2016." (Id. ¶¶ 118-21). He claims that "[a]s a direct and proximate result of these breaches…Plaintiff was injured and has sustained damages, at a minimum, $500,000." (Id. ¶ 122.)

From Plaintiff's Complaint, it is unclear what the employment contract was, or what its essential terms were, such as compensation, whether he was an at-will employee, and under what circumstances he could be terminated. The Sales Professional Bill of Rights contains ten assurances to employees. Sales professionals are given "[t]he right to an employer who tells the truth and is transparent" and "[t]he right to effective training and support from a direct manager," the "right to earn recognition and awards," as well as various "rights" surrounding benefits and compensation. (Ex. B to id. at 19-20). Plaintiff does not allege how the lack of training led to his termination and damages, or what specific contractual term was breached through the rescission of Policy 37, placing Plaintiff on Production Watch, or terminating Plaintiff.

Thus, the Court will grant Defendant's motion to dismiss Count I without prejudice, with leave to amend.

### 2. Fraud in the Inducement

In Pennsylvania, the elements of fraud in the inducement are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Eigen v. Textron Lycoming Reciprocating Engine Div., 2005 PA Super 141, ¶ 18, 874 A.2d 1179, 1185 (2005). Claims brought in federal court for fraudulent inducement under Pennsylvania law "are subject to Rule 9(b)'s requirement to plead 'with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'" Williamsburg Commons Condo. Ass'n v. State Farm Fire & Cas. Co., 907 F. Supp. 2d 673, 677 (E.D. Pa. 2012) (quoting Fed. R. Civ. P. Rule 9(b)).

Plaintiff asserts that Defendant "induced Plaintiff into entering an employment contract by misrepresenting" both "that it would accommodate Plaintiff's S.A.D. disability" and "the fact that it understood that Plaintiff would sell more in the spring and summer that [sic] he would in the fall and winter and that such a disparity would not be the basis for evaluating Plaintiff's performance." (Compl. ¶¶ 125-26).

From these allegations, it is unclear whether Plaintiff had already entered an employment contract at the time he spoke with Haag, or what specific misrepresentations were made with falsity of the facts. Thus, Count II of Plaintiff's Complaint is dismissed without prejudice, with leave to amend his Complaint to add facts supporting the elements of fraudulent inducement.

### 3. Violation of the Americans with Disabilities Act

The Americans with Disabilities Act "require[s] pursuit of administrative remedies before a plaintiff may file a complaint in court." Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999). A plaintiff must file a charge with the EEOC, and then wait 180 days after filing the charge "before being able to forego the administrative process and file suit in court." Id. The Complaint in this case contains no indication that Plaintiff filed an EEOC charge.

Defendants move to dismiss Count III of the Complaint, which asserted a violation of the Americans with Disabilities Act (ADA), on the grounds that Plaintiff did not plead exhaustion of administrative remedies at the EEOC. Where a plaintiff has failed to allege in his complaint that he filed a timely EEOC charge, courts will dismiss the claim. Hickman v. Amazon Fullfilment, 662 F. App'x 176, 178 (3d Cir. 2016) (upholding dismissal of complaint where plaintiff failed to plead in his amended complaint that he had exhausted EEOC remedies); Butler v. BTC Foods Inc., No. CIV.A. 12-492, 2012 WL 5315034, at *4 (E.D. Pa. Oct. 19, 2012) (dismissing ADA complaint where plaintiff failed to plead that he had filed a timely EEOC charge). The Court therefore dismisses Count III without prejudice and with leave to amend the Complaint to add facts alleging that he filed a timely charge with the EEOC.

### B. Motion to Strike

Plaintiff filed a "Motion to Strike Alleged 'RM Agreement' From Record" on November 30, 2017, in which he denied signing the RM Agreement and requested that all of Defendant's statements that "attempt to draw support" from the RM Agreement be stricken from the record, along with the RM Agreement itself. (Mot. to Strike, ECF 17). The RM Agreement is attached to Defendant's now-withdrawn motion to transfer venue, as well as to its motion to dismiss. (Ex. A. to Mot. to Transfer Venue, ECF 3-3; Ex. A to Mot. to Dismiss, ECF 5-3).

Defendant correctly notes that the Federal Rules of Civil Procedure do not provide for striking a document rather than all or part of a pleading; Rule 12(f) allows a Court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" "from a pleading." Fed. R. Civ. P. 12(f) (emphasis added). Rule 7(a) defines pleadings as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). The RM Agreement is none of these, and courts will deny motions to strike papers other than pleadings. See, e.g., Granger v. Gill Abstract Corp., 566 F. Supp. 2d 323, 335 (S.D.N.Y. 2008) (denying a "Motion to Strike Documents" because documents were not pleadings as defined in Rule 7(a)). Thus, Plaintiff's motion to strike is denied.

### C. Complaint-Clarification

The Court construes the "Complaint-Clarification" as a memorandum of law rather than an amended complaint. (Complaint-Clarification, ECF 18).

## VI. Conclusion

Defendant's motion to dismiss (ECF 5) is hereby **GRANTED WITHOUT PREJUDICE**. Plaintiff's Motion to Strike (ECF 17) is **DENIED**. An appropriate order follows.

O:\CIVIL 17\17-4399 Reid v Heartland Pymt Sys\17cv4399 Memorandum.docx